FILED

2006 Jan-27  PM 03:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LESLIE WAYNE CUNNINGHAM, | } | |
| | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | 04-AR-0386-S |
| | } | |
| AARON RENTS, INC., | } | |
| | } | |
| Defendant. | } | |

**MEMORANDUM OPINION**

After a jury awarded Leslie Wayne Cunningham ("Cunningham") $30,000 in lost wages, $100,000 for mental anguish and $300,000 in punitive damages against his former employer, Aaron Rents, Inc. ("Aaron"), for its firing of Cunningham, allegedly because he performed jury duty instead of his job, and after the same jury simultaneously ruled against Aaron on its counterclaim for the alleged conversion of a laptop computer, Aaron filed its present renewed motion for judgment as a matter of law, and, alternatively, for remittitur or for a new trial. Aaron's motion has been aggressively briefed and orally argued.

Although during oral argument more than three of Aaron's multitudinous points of attack on the verdict and judgment were the subjects of intense debate, the court will only write to the three issues that, in the court's opinion, deserve a written response from the court.

Cunningham's only claim is that Aaron violated a particularized Alabama statute that creates a cause of action in

favor of an employee against his employer if the employer discharges him "solely because he serves on any jury empaneled under any state or federal statute".  A violation provides for the recovery of "both actual and punitive damages".  Ala. Code § 12-16-8.1 (prior to the amendment of November 1, 2005). Cunningham, who was a store manager for Aaron, served on an Alabama grand jury for a week each month for the last three months of 2003.  He was thereafter fired.  In Aaron's post-judgment motion invoking Rule 50(a), Rule 50(b) and  Rule 59, F.R.Civ.P., it argues *inter alia*: (1) that Cunningham failed to meet his burden of proving that his discharge was "solely" the proximate result of his jury service; (2) that he failed to offer proof that he suffered damages in the form of mental anguish; and (3) that the award of punitive damages is constitutionally excessive.

   Before discussing these three highlighted issues, the court notes that Aaron's brief in support of its post-judgment motion does not attack the jury finding against Aaron on its counterclaim charging Cunningham with the conversion of a computer.  After the parties had both rested their cases, Aaron was given overnight to decide whether it wished to dismiss its counterclaim.  It chose not to do so, perhaps thinking that Cunningham would file his own Rule 50(a) motion and that the court would grant it.  If Aaron read the court's mind on this

2

subject, it failed to read Cunningham's counsels' mind. Cunningham deliberately chose not to file a Rule 50(a) motion, leaving Aaron with the obligation to argue to the jury, upon transparently thin evidence, that Cunningham had purloined a computer.  As stated, Aaron's post-judgment motion makes no mention of the adverse jury verdict on this issue.  Without a request that the court reinstate the conversion counterclaim, the court finds that Aaron has abandoned it.  This abandonment was a-little-too-little-too-late.

### Was There Adequate Proof of Cunningham's Jury Service as the "Sole" Reason for His Discharge?

Aaron admits that it fired Cunningham shortly after he completed serving on an Alabama grand jury.  However, it denies Cunningham's contention that it groused to him about the problem that his jury duty was creating or that it expressed unhappiness over Cunningham's unwillingness to request an excuse.  In September of 2003, Aaron's busiest season of the year was approaching.  Aaron's business of "rent-to-sell" a variety of household items picks up before Christmas.  Aaron admits, and in fact relies upon, the fact that while Cunningham was on jury duty it complained to him that his job performance was poor.  It denies, of course, that Cunningham's jury service was a reason, or the reason, for his shortcomings as store manager.  Aaron's decision-makers testified that Cunningham was fired not because

of his jury service but because of poor performance and/or
because they had reason to believe that he had stolen a computer
from the store.

As best this court can understand Aaron's interpretation of
the Alabama statute (Ala. Code § 12-16-8.1) here invoked by
Cunningham, it is that for an employee to meet his burden of
proving that his jury service was the "**sole**" reason for his
discharge, he must not only prove that he was discharged after
being called to jury service, but that **all** of the employer's
proffered or imagined reasons for terminating him be
affirmatively disproven.  Such an understanding of § 12-16-8.1
would make it very difficult, if not impossible, to prove a *prima
facie* case.

Consistent with its interpretation of § 12-16-8.1, Aaron
complains of this court's failure to give its requested jury
charges numbered 14, 15 and 16, which are what it says the jury
needed to hear in order for it adequately to understand § 12-16-
8.1.  Interestingly, Aaron does not assert as error the court's
failure to give its charge numbered 13, which contains language
almost identical to the language that was, in fact, employed by
the court in its instruction to the jury.  What Aaron's charge
numbered 13 contained, and what the court told the jury about §
12-16-8.1, were both accurate and sufficient.  The statute is not
quite as difficult to understand as Aaron supposes.  Some of

4

Aaron's proposed elaborations on the statute would have been confusing, if not actually misleading.  For instance, if the court had given Aaron's charge numbered 15, the jury would have heard the following:

> This statute only forbids an employer from terminating an employee solely because he serves on a jury.  **Any other misconduct that may have been alleged by Leslie Cunningham, such as reporting to work the same day that he served on the jury or working on Saturdays, is not conduct that is regulated or prohibited by Alabama law.**

(emphasis supplied).

Not only is the emphasized portion of this proposed charge confusing, but Aaron itself insisted, and the court agrees, that an employee's failure to report for work on his next regularly scheduled hour after being dismissed from jury duty would constitute conduct that precludes recovery.  This is in an express proviso contained in § 12-16-8.1.  That proviso sounds an awful lot like conduct that "is regulated by Alabama law".

The only case decided by the Supreme Court of Alabama interpreting this statute is *Norfolk Southern Ry. Co. v. Johnson*, 740 So.2d 392 (Ala. 1999).  There the Alabama Court said:

> [W]e hold that an employee may establish a prima facie case of retaliatory discharge, in a case filed pursuant to § 12-16-8.1, by presenting substantial evidence **suggesting** that he was discharged "solely" because he "served" on a jury.  If the employee establishes a prima facie case, then the burden shifts to the employer to come forward with evidence showing that the employee was terminated for a legitimate reason.  If the employer satisfies this burden, then the burden shifts back to the employee to show that the proffered reason is a pretext.

5

*Id*. at 398  (emphasis supplied).

In the instant case, very substantial evidence was presented to more than "suggest" that Cunningham's discharge was causally connected to his jury service.  Aaron came forward with two facially legitimate reasons for Cunningham's discharge, i.e., poor performance and suspicion of conversion of company property. The alleged conversion of the laptop was so lacking in evidentiary support as to raise the red flag of pretext and to appear contrived.  When one reason is pretextual, it brings the other reasons into question.  Cunningham's arguably deficient performance as store manager is more than arguably intertwined with his jury service.  It doesn't take a masters degree in business to know that it is difficult to manage a business while on jury duty.  "Poor performance" provides more of an excuse than a legitimate reason for Aaron's decision.  Conspicuously, Aaron did not request a jury charge patterned on the above-quoted holding from *Norfolk Southern*.  If Aaron had requested such a charge, the court might not have given it, because the Eleventh Circuit Pattern Jury Instructions, which are expressly designed for a trial court's use in employment discrimination cases, no longer employ the confusing and esoteric concept of the shifting burden described in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089 (1981).  This jury was clearly told that the ultimate burden was on Cunningham to prove

that his jury service was the sole reason for his discharge.  The jury was not instructed, unless by Cunningham's counsel during closing argument, that a less than peerless job performance by Cunningham, if occasioned by his jury duty, does not prevent a jury finding that the jury service was the **real** or "sole" reason for the discharge.

This jury heard evidence upon which it could reasonably have found for Aaron instead of for Cunningham, that is, except on Aaron's counterclaim, which the court would have eliminated on Cunningham's Rule 50(a) motion if he had filed one.  The evidence could both justify a finding that § 12-16-8.1 was violated as it could a finding that it was not, but the decision of that fact question was for the jury.

### Did Plaintiff Meet His Burden of Proving Mental Anguish of $100,000?

The court recognizes that $100,000 represents a whole lot of mental anguish.  The court is persuaded that this is not a case in which it should, as Aaron alternatively suggests, reduce the sum awarded for the non-economic component of Cunningham's actual damages.  As this court sees it, this jury either had sufficient evidence upon which it could place a value of $100,000 on Cunningham's mental anguish, or there was no proof upon which compensatory damages in the form of mental anguish could be awarded.  It comes down, then, to whether Cunningham's counsel

made a fatal error when he failed to ask Cunningham something like the following leading question: "Did you suffer any mental distress as a result of your being fired?".  If counsel had asked such a question, he would undoubtedly have obtained the desired answer, namely, "Yes, I was terribly distressed".  Aaron could not make its present argument if the jury had heard that question and that answer.  The court would undoubtedly have overruled any objection interposed to such a leading question.  If the magic words "mental anguish", or their linguistic equivalent, had been voiced by Cunningham, Aaron's counsel would undoubtedly have cross-examined Cunningham on the extent of his anguish.   This would only have given Cunningham the opportunity to respond, either angrily or meekly, asking for a Kleenex.  Instead, only because the leading question was not asked, Aaron now insists there is a total absence of proof.

Cunningham testified that at the end of his jury service he was so anxious just before Christmas about the possibility that he was about to be fired that he called Aaron's home office and talked to its lawyer, being assured by him that he had nothing to worry about.  Cunningham obviously was worried, and events proved that he had reason to worry.  The fact that he was thereafter terminated less than a week after Christmas and was simultaneously accused of stealing a computer is a deadly combination of experiences that is calculated to cause, and

presumptively did cause, mental anguish, and the jury could see it on Cunningham's face, better than if "mental anguish" had been articulated in a canned colloquy, using a special vocabulary. The absence of words like "anguished", "chagrined", "worried", "humiliated", "embarrassed", "stressed out", "distressed", "upset", "depressed" or "sleepless" is not, or should not be, a dispositive deficiency in the proof of this element of actual damage when the totality of the circumstances, including Cunningham's face, body language and tone of voice, as he told about losing his paycheck and having to look for other work, were carefully observed by the jury. When he told his story, without ostentation or weeping on the stand, he provided more eloquent and creditable proof of mental anguish than if he had woodenly used descriptive terms. The court repeats the obvious. To be fired right after Christmas while being told that you are a thief are self-proving of some mental anguish. If some verbalization of "mental anguish" is essential, hyperbole is more forensically dangerous than understatement. Juries are often turned off by a plaintiff's strident expression of how horribly he was injured. To allow an injury to speak for itself is a defensible strategy. Once a *prima facie* case of mental anguish was made out, as this court believes it was, this jury, which was properly instructed on how to evaluate non-economic damage, became the decider of the amount of that damage just as it was on the liability question,

9

that is, unless its verdict shocks the conscience of the court.
The sum of $100,000 in this case is not so shocking as to call
for court intervention.  If intervention were called for, the
only logical action for the court to take would be to reduce the
$100,000 to zero.

There is another reason why the court will neither set aside
nor reduce the jury award for mental anguish.  Although the
Supreme Court of Alabama has not yet expressed agreement or
disagreement with the following proposition stated by the Tenth
Circuit in *Foster v. MCI Telecommunications Corp.*, 773 F.2d 1116
(10th Cir. 1985), this court believes that the Alabama Court
would subscribe to it in a case like this one.  The Alabama
statute here in play stands as a positive recognition of, and an
enforcement device for, an important Alabama public policy.   If
that public policy is to be vindicated, the appropriate
proposition for vindication was explicated by the Tenth Circuit,
in the following language:

> Defendant asserts that the district court erred in
> awarding plaintiff $50,000 in general damages for having
> deprived him of his constitutional right to employment.
>
> Defendant relies on *Carey v. Piphus*, 435 U.S. 247, 98
> S.Ct. 1042, 55 L.Ed.2d 252 (1978), for its proposition that
> substantial damages cannot be awarded for the deprivation of
> constitutional rights per se.  *Carey* held that a plaintiff
> could recover only nominal damages for a procedural due
> process violation in the absence of proof of actual injury.
> *Id*. at 248, 98 S.Ct. at 1044.  But the violation here was far
> from procedural.  Defendant deprived plaintiff of his right to
> be free from employment discrimination and his right to be

10

free from humiliation due to his race.  These were violations of plaintiff's substantive rights protected by the Thirteenth Amendment.  In *Carey*, the Court specifically noted that cases awarding damages for deprivation of substantive constitutional rights were not there controlling.  *Id.* at 264-65, 98 S.Ct. at 1052-53.  One need not look far to find authority for the proposition that substantial damages, both compensatory and punitive, may be awarded for the violation of substantive constitutional rights.  We therefore reject defendant's argument that only nominal damages can be awarded for the deprivation of plaintiff's substantive Thirteenth Amendment rights.  *See Konezak v. Tyrrell*, 603 F.2d 13, 17 (7th Cir. 1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980); *Baskin v. Parker*, 602 F.2d 1205, 1210, (5th Cir. 1979) (rejecting the same erroneous construction of *Carey*).

It is settled that damages may be awarded for nonpecuniary injury, such as psychological harm, where plaintiff has been deprived of his substantive constitutional rights.  In *Baskin v. Parker*, 602 F.2d 1205 (5th Cir. 1979), the court recognized that:

> Emotions are intangible but they are none the less perceptible.  The hurt done to feelings and to reputation by an invasion of constitutional rights is no less real and no less compensable than the cost of repairing a broken window pane or a damaged lock.  Wounded psyche and soul are to be salved by damages as much as the property that can be replaced at the local hardware store.

*Id.* at 1209.  Justice requires that plaintiff be compensated for the intangible injuries he suffered as a result of the constitutional deprivation.  The difficulty of setting a money value on intangible, nonpecuniary, but actual damages cannot be permitted to deter society from its duty to compensate plaintiff.

> It is the law in this Circuit that absent an award so excessive or inadequate as to shock the judicial conscience and raise an irresistible inference that passion, prejudice or another improper cause invaded the trial, the [court's] determination of the amount of damages is inviolate.

*Ketchum v. Nall*, 425 F.2d 242, 244 (10th Cir. 1970); *Morgan v. Labiak*, 368 F.2d 338, 341 (10th Cir. 1966).  "Ordinarily this question is primarily for the trial court alone and a determination thereof presents no grounds for reversal on appeal except for manifest abuse of discretion."  *Smith v. Welch*, 189 F.2d 832, 837 (10th Cir. 1951).

11

We cannot say that the award here was so excessive as to "shock the judicial conscience," in light of the many other cases upholding large compensatory awards for deprivations of substantive constitutional rights.

*Id.* at 1120-1121 (footnotes omitted).

This court notes that the Tenth Circuit relied upon *Baskin v. Parker*, a  Fifth Circuit case decided in 1979 prior to the creation of the Eleventh Circuit, and therefore binding on the Eleventh Circuit.  As this court sees it, although a person in Alabama does not have "**constitutional**" protection from being fired in retaliation for performing jury service, his duty as a citizen to serve on a jury is expressly protected by this specific and carefully tailored statute, which gives him punitive damages as a means of teaching Alabama's employers not to fire an employee for doing his duty.  This court believes that the Alabama Court would agree with the concept expressed above by the Tenth Circuit, especially if the need to vindicate an important right enjoyed by a citizen is accompanied by wage loss and a detectible degree of psychic injury.

Only because this court feels comfortable with its ability to predict the Alabama Court on this subject if and when a case like this one comes before it, it has not certified the question to that Honorable Court.

### Is the $300,000 Punitive Award Excessive?

The Alabama Legislature provided categorically for an award

of punitive damages, as well as actual damages, in the event §
12-16-8.1 is violated.  The Legislature presumptively knew that
the two purposes for imposing punitive damages are retribution
and deterrence.  In this statute the Legislature was not simply
lecturing on the obligations of citizenship.  It was acting as
judge and jury with respect to whether an award of punitive
damages for a violation of § 12-16.8.1 is called for.  It
conspicuously did not make an award of actual damages a
prerequisite to an award of punitive damages.  It found that some
punitive damages are to be imposed even when there is no actual
injury.

During oral argument on Aaron's post-judgment motion, the
court asked the parties to express their respective opinions on
the significance, if any, of what this court had to say on the
subject of punitive damages in *McClain v. Metabolife
International, Inc.*, 259 F.Supp.2d 1225 (N.D. Ala. 2003),
reversed by *McClain v. Metabolife International, Inc.*, 401 F.3d
1233 (11th Cir. 2005), on grounds not relied upon discussed in
this court's above-cited published opinion.  The parties have
responded to the court's request.  The court sticks by what it
said in *Metabolife* except for one thing.  This court was wrong in
following *Johannson v. Combustion Engineering, Inc.*, 170 F.2d
1320 (11th Cir. 1999), the case in which the Eleventh Circuit
held that a trial court can determine the maximum amount of

13

punitive damages permitted by the Constitution and reduce an excessive judgment to that exact figure, thus circumventing the historical procedure of remittitur, that recognizes the Seventh Amendment's command for trial by jury.  When this court wrote *Metabolife*, it was just as unaware of *Hetzel v. Prince William County, Va.*, 523 U.S. 208, 118 S.Ct. 1210 (1998), as the Eleventh Circuit apparently was when it wrote *Combustion Engineering*, a year after *Hetzel*.  The Supreme Court had unequivocally held in *Hetzel*:

> The Court of Appeals's writ of mandamus, requiring the District Court to enter judgment for a lesser amount than that determined by the jury without allowing petitioner the option of a new trial, cannot be squared with the Seventh Amendment. See *id.* At 29-30, 9 S.Ct. At 698-699; see also *Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935) (reaffirming the practice of conditionally remitting damages, but noting that where a verdict is set aside as grossly inadequate or excessive, both parties remain entitled to have a jury determine the issues of liability and the extent of injury) . . . .

118 S.Ct. at 1211-1212.

If *arguendo* the $300,000 award of punitive damages against Aaron is deemed excessive, the amount could not be reduced except by an order of remittitur, which, if not accepted by Cunningham, would cause a new trial on all issues.  The court cannot imagine how to conduct a new trial limited to the question of punitive damages.

Without being unduly intimidated by the prospect of a new trial, the court looks at the factors by which to evaluate the punitive award for possible constitutional excessiveness. Cunningham's actual damages were $130,000.  The punitive award of

14

$300,000 is less than three times these actual damages. Therefore, any test of proportionality is met.  Even if Cunningham had not been awarded actual damages, the Alabama Legislature, as stated, provided automatically for an award of punitive damages in some amount.  In other words, the conduct proscribed by § 12-16-8.1 is legislatively deemed worthy of punishment.  The Legislature must have thought that the proscribed conduct is reprehensible.  The degree of reprehensibility was for the jury.  Considering that the Legislature contemplated a sanction in the form of punitive damages as retribution for an employer's retaliation against its employee for performing jury service, this court cannot say that $300,000 is not commensurate with the egregiousness of the misconduct here found by the jury.  Neither can the court, as a matter of law, find that the $300,000 in punitive damages is duplicative of the damages awarded by the jury for mental anguish.  As the other factor to be considered, as discussed in *Metabolife*, there are no other punitive awards under this statute with which to compare this one, so the comparison factor is inapposite.

Lastly, the Legislature in Ala. Code § 6-11-21 provided in cases like this one a cap on punitive damages of three times the compensatory damages, or $500,000, whichever is greater.  The $300,000 awarded by this jury is well less than $500,000.

15

Although the Legislature cannot override the Due Process Clause, its determination of the maximum punitive damages in Alabama must be given deference.  Aaron understandably makes no mention of Alabama's § 6-11-21 cap.

On the basis of the foregoing, the court finds no reason to interfere with the amount fixed by the jury as what it took to accomplish the purposes of punishment and deterrence.

### Cunningham's Motion for Attorneys' Fees

Cunningham, reacting to what he feels were Aaron's overly aggressive trial tactics, has filed a motion for the taxation of attorneys' fees against Aaron despite the fact that there is no prevailing party fee shifting provision in § 12-16-8.1.  The court finds no conduct by Aaron that deserves such an unusual sanction.  Aaron's conduct was fairly and adequately sanctioned by the jury.  The overruling of Cunningham's motion, however, will be without prejudice to Cunningham's right to sue separately for malicious civil prosecution as a result of the outcome on the counterclaim.  The court does not encourage such a course of action by Cunningham, but does not foreclose it.

### Conclusion

Appropriate orders consistent with this opinion will be separately entered.

16

DONE this 27th day of January, 2006.


WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE